**In re Jo Paul ROGNSTAD and Diane Rognstad, Debtors.**

**Bankruptcy No. 88–00461.**

United States Bankruptcy Court, D. Hawaii.

Aug. 3, 1990.

Henry E. O'Neill, Honolulu, Hawaii, for U.S.

Steven Guttman, Honolulu, Hawaii, for debtors.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION TO DISMISS

JON J. CHINEN, Bankruptcy Judge.

On July 6, 1990, a joint hearing was held on two Motions to Dismiss filed by the United States of America. One motion was filed in the subject cause, Case No. 88–00461, and the second motion was filed in Case No. 88–00781, Jo Paul Rognstad and Associates, Inc. The instant Findings of Fact and Conclusions of Law deal only with the subject cause. A separate Findings of Fact and Conclusions of Law will cover Case No. 88–00781. At the hearing, James A. Wagner, Esq. appeared on behalf of Jo Paul Rognstad and Associates, Inc.; Steven Guttman, Esq. appeared on behalf of the Jo Paul Rognstad and Diane Rognstad ("Debtors"); Robert M. Ehrhorn, Jr., Esq. appeared on behalf of Okamura, Takushi, Funaki & Wee; Curtis B. Ching, Esq. appeared on behalf of the Office of the United States Trustee ("OUST"); Kevin Wakayama, Esq. appeared on behalf of the Department of Taxation, State of Hawaii ("State of Hawaii"); and Henry E. O'Neill, Esq. appeared on behalf of the United States of America ("United States").

Based upon the memoranda submitted, the records and file herein and the arguments of counsel, the Court hereby renders the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtors filed their voluntary petition under Chapter 11 on July 14, 1988, together with a list of creditors. On the same day, copies of the Standing Order in Chapter 11, Debtor In Possession Case were furnished to the Debtors and James Wagner, Esq., the attorney who filed the petition on behalf of the Debtors. On August 12, 1988, both Mr. Wagner and Mr. Rognstad acknowledged receipt of the Standing Order.

Among others, the Standing Order directed that the Debtors:

1. file with the Bankruptcy Court a monthly profit and loss statement ("financial statement") in accordance with generally accepted accounting principles not later than the 15th day of each month following the month covered by the financial statement;

2. shall take all steps reasonable necessary to prevent the incurring of administrative or priority expenses.

As of the date of the petition, the United States had filed Notices of Federal Tax Lien (filed November 13, 1987), and an Assignment of Purchaser's Interest in Agree-

ment of Sale (recorded April 22, 1988). As a result, the United States had a lien on all of Debtors' property, including cash collateral. The State of Hawaii also claims a tax lien on all of Debtors' property.

Because the Schedules were not attached to the petition on July 27, 1988, the Court issued an Order to File Schedules, which was due on July 29. Then, on July 28, 1988, the Court served its Order for Payment of Federal, State of Hawaii and County Taxes, with the certificate of service being filed on the same date. The order directed that all taxes be timely paid.

Instead of filing the schedules and statement of affairs as ordered, the Debtors, on August 8, 1988, filed an Ex Parte Motion for Extension of Time within which to File Schedules and Statement of Affairs, which motion was granted, and the filing date was extended to August 29, 1988.

On September 19, 1988, the United States filed a Motion for Relief from the Automatic Stay and Adequate Protection. Among others, the United States alleged that, as of September 19, 1988, Debtors had not yet filed their Schedules and Statement of Affairs, although ordered to be filed by August 29, 1988, and Debtors had not filed their monthly financial statements for July and August 1988.

Debtors filed their Statement of Financial Affairs for Debtor Engaged in Business, Schedules, Summary, Disclosure on September 23, 1988. At item 14.b. thereof, Transfers of Property not in the ordinary course of business, the Debtors listed "None".

At the preliminary hearing held on the Motion to Vacate Stay filed by the United States, the Court continued for final hearing the matter of liability and valuation. The Court then ordered the Debtors to file their monthly financial statements within one week (October 24) or the case may be dismissed. As a result, on October 24, 1988, the Debtors filed their financial statements for the period of July 1988 through September 1988.

At the meeting of creditors held on November 22, 1988, Mr. Rognstad was questioned under oath about whether he or his wife had any bank account of any kind. Mr. Rognstad unequivocally denied the existence of any such account. Yet, three weeks later, on December 12, 1988, from a bank account in California, the Debtors made a $32,173.26 loan to Lily Hyon at 7% interest. This loan was made without knowledge or approval of the Bankruptcy Court or the United States, who had a tax lien on all of Debtors' properties, including cash collateral. And, the interest received from this loan was never reported in Debtors' monthly financial statements for 1988 and 1989.

The financial statements for the month of October 1988 and November 1988 were filed on December 13 and December 28, respectively. Thereafter, nothing was filed. As a result, on April 5, 1989, the OUST filed a Motion to Convert or Dismiss with the hearing scheduled for August 25, 1989. On April 10, 1989, Debtors then filed their financial statements for the months of December 1988, January, February and March of 1989. As a result, on April 19, 1989, the OUST withdrew its Motion to Convert or Dismiss.

Because the Debtors did not file financial statements for the months of April, May and June of 1989, and for failure to pay the quarterly fees, on July 19, 1989, the OUST filed a Motion to Convert to Chapter 7 or to Dismiss. As a result, on August 2, 1989, the Debtors filed their financial statements for April, May, June and July 1989.

At the hearing held on August 25, 1989, because the Debtors were current on their quarterly fees and financial statements, the Court denied the OUST's Motion to Convert or Dismiss. However, the Court ruled that, if Debtors hereafter did not timely file their financial statements or pay the quarterly fees, the Court would dismiss the case. In addition, for not complying with the Court's order to file the financial statements and pay the quarterly fees timely, the Court imposed upon Mr. Rognstad a fine of $100.00, which was paid.

On January 10, 1990, the United States filed a Motion to Compel Debtors to File Tax Return, Disclosure Statement and Plan

of Reorganization, or in the Alternative, to Dismiss. The United States contends that, though the Debtors have received the Standing Order which requires them to timely file their federal and State of Hawaii tax returns, the Debtors have failed to file their 1988 income tax returns. Debtors opposed the motion.

Following the hearing on February 28, 1990, the Court ordered that all tax returns, federal and state, must be filed locally by 4:00 p.m., April 1, 1990; otherwise, the Court may dismiss both cases, the individual and corporate bankruptcy cases. The Court further ordered that both the Debtors and Jo Paul Rognstad and Associates, Inc. must file their plans of reorganization and disclosure statements within 30 days after the resolution of the 505 hearing.

On March 19, 1990, the United States filed a Motion to Compel Debtors to File Tax Returns with the hearing scheduled for May 9, 1990. Then, on April 4, 1990, the Debtors filed a Motion for Order Extending Time to File Tax Returns which were due on April 1, 1990. A hearing on the motion was scheduled for May 30, 1990. Debtors' attorneys who filed the motion stated that the Debtors were in Europe and unable to resolve certain questions to complete the tax returns.

The Debtors filed their 1988 tax return on April 20, 1988. They also filed their financial statements for the month of March 1990 (which was due on April 15, 1990) on April 20, 1990.

Then, on April 25th, Debtors filed an amended financial statement for March 1990. And, also on April 25, 1990, the Debtors filed an Amended Statement of Affairs. In item 14.b, the Debtors disclose that they had quitclaimed "8.86% interest in the Pensacola Apartment Partnership on January 5, 1988." And, on page one of Schedule B, Personal Property, item b., Debtors disclosed for the first time the existence of a bank account in California, indicating that $32,173.26 of the account was "loaned to Lily Hyon on December 12, 1988 at (7%) interest".

At the hearing held on May 9, 1990 on the Motion to Compel filed by United States, the Court ordered that the Debtors are to provide a copy of the 1988 corporate tax return to counsel for the United States by the next day. And, the 1989 corporate tax returns were to be filed within 30 days.

The income tax returns for the year 1988 for the Debtors reflect unpaid tax liability. The filings consist of separate Forms 1040 and Forms 1041 for each Debtor. The Form 1040 for Mr. Rognstad reflects a liability of $52,230.00, no portion of which has been paid. The Form 1041 reflects no liability. The Form 1040 for Mrs. Rognstad reflects a liability of $3,135.00, no portion of which has been paid. The Form 1041 reflects a liability of $634.00, no portion of which has been paid. The total 1988 tax liability reported by the Debtors amounts to $56,008.00 (exclusive of penalties and interest), and such liability has been accrued in direct violation of the Court's Standing Order.

The Debtors have sought to portray all but $634.00 of the tax liability as a pre-petition debt by filing returns that reflect a termination of the Debtors' taxable year upon the date the petition was filed. I.R.C. § 1398(d)(2). However, the Internal Revenue Code specifically provides that such termination election "may be made only on or before the due date for filing the return for the taxable year" ending on the date that the bankruptcy proceeding commenced. I.R.C. § 1398(d)(2)(D). Pursuant to Temp. Treas. Reg. § 7a.2, this election must have been made not later than the 15th day of the fourth full month the end of the short taxable year. (The amendments to I.R.C. § 1398 on October 22, 1986 have no effect on this requirement.) In other words, such election was required to have been made not later than November 15, 1988. There is no evidence that this election was ever done; therefore, the entire $56,008.00 income tax liability represents an administrative expense accrued in direct violation of the Court's Standing Order.

On May 18, 1990, Debtors filed their April financial statements, which was due on May 15.

Also, on May 18, 1990, the United States filed a Motion to Dismiss which was scheduled for hearing on June 27, 1990. The United States contends that the case should be dismissed for the following reasons:

1. Failure of Debtors to comply with the orders of this Court.

2. Failure of Debtors to voluntarily disclose transfer of property not in the ordinary course of business.

3. Failure of Debtors to voluntarily disclose assets.

4. Lack of good faith on the part of Debtors.

5. With administrative expenses accruing, there is no hope of reorganization.

On May 30, 1990, the OUST filed a Joinder in Motion to Dismiss. It gave the following reasons for dismissal of the case:

1. Bad faith on the part of Debtors in their misrepresentation of material facts and failure to abide by orders of the Court.

2. Failure on the part of Debtors to voluntarily disclose all of their assets.

At the hearing held on May 30, 1990 concerning Debtors' Motion for Order Extending Time to File Tax Return, the Court granted the extension under the following conditions:

1. Both the Debtors and Jo Paul Rognstad and Associates, Inc. must each pay $500.00 to the Clerk of Court by June 4, 1990 by way of cash, certified or cashier's check. And, payment of the 1988 taxes on the corporate debtor and individual debtors must be made by June 4, 1990 by way of cash, certified or cashier's check. Otherwise, on affidavit of counsel, either or both cases may be dismissed.

2. The 1989 tax returns must be filed by June 4, 1990, with the payment of the taxes to be determined at the hearing on the Motion to Dismiss scheduled for June 27, 1990.

On June 18, 1990, the Debtors filed a Motion to Continue Hearing on the Motion to Dismiss filed by the United States. This was scheduled for hearing on June 22.

On June 19, 1990, the State of Hawaii filed a Joinder in Motion to Dismiss. The State of Hawaii contends that the Debtors have failed to comply with the Bankruptcy Code and the orders of the Court, that administrative taxes have not been paid.

Also, on June 19, 1990, the Debtors filed their financial statements for May 1990.

On June 25, 1990, the United States filed an Amended Notice of Motion to Dismiss, re-scheduling the hearing date to July 6, 1990. This rendered moot Debtors' Motion to Continue Hearing which was scheduled for June 22.

On July 2, 1990, the Debtors filed a Memorandum in Opposition to the Motion to Dismiss. Although Debtors attempted to explain some of the United States and the State of Hawaii's allegations, they made no effort to explain the OUST's allegations. Debtors only suggested that, instead of dismissal, a trustee should be appointed.

On July 5, 1990, several creditors filed Joinders in Opposition to Motion to Dismiss, the format being the same for all the Joinders.

To the extent that these Findings of Fact constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

Good faith is an implicit requirement in every bankruptcy filing. *In re Thirtieth Place, Inc.*, 30 B.R. 503 (9th Cir. BAP 1983). As the Supreme Court stated in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979):

By seeking discharge, however, the respondent placed the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor."

The primary purpose of the bankruptcy law is to give the debtor a "fresh start", free from creditor harassment and excessive debt. As stated in *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934):

One of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." This purpose of the act has been again and again emphasized by the courts as being a public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort.

As the courts have often repeated, the bankruptcy law is to provide relief "to the poor but honest debtor who has tried his best to pay his creditors but failed." *See In re White*, 63 B.R. 742, 744 (Bankr.N.D. Ill.1986).

Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual.

The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image ("honest but unfortunate debtor") and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has overutilized the privilege. *Riesenfeld, Creditors' Remedies and Debtors' Protection* 729 (3d ed.1979).

Included in the exercise of good faith is the requirement that the debtor disclose all assets and that all court orders be followed. It is appropriate to dismiss a Chapter 11 case for cause if it appears that bad faith is present and dismissal for a lack of good faith is a matter within the Bankruptcy Court's discretion. *In re Stolrow's Inc.*, 84 B.R. 167, 170 (9th Cir. BAP 1988). An important factor in determining the existence of bad faith is whether the Debtors have misrepresented material facts. *In re Goeb*, 675 F.2d 1386, 1390 n. 9 (9th Cir. 1982). The finding of bad faith may rest on such nondisclosure or misrepresentation and even subsequent amendments do not vitiate bad faith in failing to disclose relevant facts. *Big Shanty Land Corp. v.*

*Comer Properties*, 61 B.R. 272, 281 (N.D. Ga.1985).

As stated in *In re Setzer*, 47 B.R. 340 (Bankr.E.D.N.Y.1985),

Good faith is not defined by the Bankruptcy Code, but has been repeatedly held to require a showing of an honest intention. *See Johnson v. Vanguard Holding Corp.*, 708 F.2d 865, 868 (2d Cir.1983) (*In re Johnson*). Its broad application to various factual situations requires inquiries into any abuses of the provisions, purpose or spirit of the bankruptcy law and into whether the debtor honestly requires the liberal protection of the Code. *See In re Vlahakis*, 11 B.R. 751, 753 (Bankr.M.D.Ga.1981). Courts have held many factors to be material to the broad principle of good faith, and have recognized that the determination can only be made on an ad hoc basis. *See, e.g. In re Chase*, 28 B.R. 814, 817–18, 10 B.C.D. 488, 490–91 (Bankr.D.Md. 1983).

Good faith or the lack thereof must be determined on a case by case basis. *In re Brown*, 88 B.R. 280 (Bankr.D.Haw.1988); *In re Bingham*, 68 B.R. 933, 935 (Bankr.M. D.Pa.1987).

In the instant case, the facts do not show that Debtors are poor but honest individuals who have tried their best, but failed to pay their debts. To the contrary, the facts show that Debtors have not been honest with the Court and the creditors. Instead of complying with the provisions of the Bankruptcy Code and listing all of their assets in their schedules, the Debtors have been playing a game of hide and seek. They seem to say, "we'll hide our assets, you seek them out, if you can".

In addition, the Debtors have repeatedly ignored the requirements of the Bankruptcy Code and have defiantly ignored the orders of the Court. The Debtors have filed their Schedules and Statement of Affairs, their monthly financial statement and their tax returns only after the Court threatened to dismiss the case. Likewise, the Debtors have paid their quarterly fees to the OUST only because of threat of dismissal.

A person who files for relief under the Bankruptcy Code must abide by the provisions of the Code and the orders of the Court. However, the Debtors in this case prefer to ignore the Code and the orders of the Court. The Debtors flagrantly flaunted their contempt of the Court's order when, instead of filing their 1988 tax return on April 1, 1990 as ordered, they chose to travel to Europe on a vacation. Instead of living a frugal life, they chose to expend money for their own pleasure.

The statement of affairs originally filed by the Debtors was materially false, failing to disclose the existence of a bank account containing at least $32,000.00. The returns, the schedules, and Debtors' testimony are contradictory regarding the Debtors' ownership of various corporate entities, through which significant funds have been flowing without a proper accounting to this Court and the creditors.

The "loaning" of $32,000.00 in the Home Savings & Loan account in California, five months after the petition was filed, is in direct violation of the Standing Order in Chapter 11 Debtor in Possession Cases with respect to the Debtor's duties regarding "cash collateral." By virtue of the Notice of Federal Tax Lien filed November 13, 1987, the United States of America is a secured creditor of the Debtors. The tax lien attaches to all property and rights to property of the Debtors, including the proceeding of the accounts receivable. I.R.C. § 6321. The State of Hawaii is similarly a secured creditor with respect to these funds for some of the tax obligations that the Debtors owe to it. Not only did the Debtors not comply with the Court's clear instructions regarding their use of cash collateral; they actively took steps to conceal the existence of the cash collateral through the filing of schedules which failed to include these funds and by Mr. Rognstad's denial of the existence of any bank accounts at the meeting of creditors.

The prejudice to the taxing authorities as a result of the transactions described above is obvious. The funds "loaned" to Lily Hyon were directly impressed with the tax liens. Further, as secured creditors, the United States of America and the State of Hawaii are entitled to receive post-petition interest on their secured claims. The interest accruing on these claims amounts to hundreds of thousands of dollars annually. The longer the bankruptcy case continues, the more the Debtors will owe. The Debtors continue to accrue additional liabilities which the Court has ordered they not do.

The facts show that Debtors cannot propose a viable plan of reorganization. The State of Hawaii is owed substantial sums, which claims, in large part, are independent of the tax claims of the United States. The schedules reflect substantial amounts owed to other creditors. Debtors purport to have no liquid assets with which to satisfy these claims. Payment of the Debtors' individual liabilities by their corporate entities creates a further tax liability to the Debtors. Liquidation of assets will create even more tax liabilities.

A debtor in possession is a fiduciary with significant obligations and responsibilities towards the creditors of the estate. These debtors in possession, however, have grossly abused the protections afforded by the Bankruptcy Court, demonstrating wanton disregard for the interests of any party except themselves. The Court finds a lack of good faith on the part of Debtors.

For all the foregoing reasons, the Court hereby dismisses this case with prejudice. To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so deemed.