**Curt Nichols DANIELS, Debtor(s).**

No. 06–01659.

United States Bankruptcy Court, S.D. Iowa.

Jan. 4, 2007.

Michael P. Mallaney, West Des Moines, IA, for Debtor.

James L. Snyder, Robert C. Gainer, Des Moines, IA, for U.S. Trustee.

## DECISION RE: MOTION
## TO CONVERT CASE

WILLIAM L. EDMONDS, Bankruptcy Judge.

Three creditors move to convert Curt Daniels's chapter 11 case to chapter 7. Daniels objects. Hearing on this contested matter proceeding was held December 4, 2006 in Des Moines. Matthew T. Cronin appeared as attorney for the three movants: Hunters Retreat, L.L.C. (Hunters); WSH Properties, L.L.C. (WSH); and Navajo Associates, L.L.C. (Navajo). Michael P. Mallaney appeared as attorney for Daniels. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Curtis Daniels filed his chapter 11 petition on August 14, 2006. He lives near Chariton, Iowa. He graduated from Drake University Law School in 1973. He has been practicing law for only three years, and he has established a professional cor-

poration, Curt Daniels, P.C., for that purpose. Initially, he began taking criminal defense cases. Three months into his practice, he took on a personal injury case which has taken most of his time since. The case has not yet been resolved, and he has as yet earned no fee from it. He expects to start taking other cases beginning during the next 60 days.

Daniels also farms. In 1975 he formed Indian Creek Corporation (Indian Creek). Initially, he and his now former spouse, Constance Daniels, owned 95 per cent of the shares of stock in Indian Creek. A few relatives owned the remaining shares. Daniels later became the sole shareholder. The corporation owns approximately 1,225 acres of farmland in Lucas County, Iowa ("the FARM"). Indian Creek raises cattle on some of the acres; it rents out other acres to a farmer named Brad Arnold. It also rents acres to Daniels (exhibit OO). Evidence is insufficient on the financial terms of the leases. Daniels values the farm land at $1.5 million or $1.6 million. Indian Creek owns some farm equipment. Daniels estimates its value at $100,000.00. Arnold owes some remaining rent for 2006, perhaps $22,000.00. He has not paid because of his concern over whom to pay.

Indian Creek had owned some other farmground near Mingo, Iowa, where it operated a hog confinement facility. Indian Creek was delinquent in paying its real estate taxes, and in 1998, the property was sold at tax sale. WSH obtained the tax sale certificate, and in 2001, it acquired the tax deed. A dispute with WSH arose when Daniels and Indian Creek removed property related to the hog operation from the land. They considered the property personalty. WSH considered it real estate. WSH filed a petition against Daniels and Indian Creek in the Iowa District Court for Lucas County, seeking recovery for damages and recovery of possession.

WSH obtained a jury verdict of $533,952.00 for wrongful detention of the equipment and $299,850.00 for value of the property (see exhibit 2). In February 2005, in ruling on post-trial motions, the trial court required remittitur of $287,952.00 on the wrongful detention damages, which would have resulted in a judgment for such damages of $246,000.00 (id.). It also reduced to $120,000.00 the valuation of the property wrongfully taken, and it required WSH to file an election between return of the property or money judgment for that amount (id.). WSH agreed to remittitur and chose return of the property (exhibit 4). Judgment entered against Daniels and Indian Creek for $246,000.00 and possession (id.).

Daniels and Indian Creek appealed, and on August 9, 2006, the Iowa Court of Appeals reversed the judgment and remanded the matter to the trial court for a new trial on all issues (id.). The matter remains pending.

Heritage Bank, a mortgagee of the FARM, in early 2006, filed a foreclosure action against the FARM, naming as defendants Indian Creek, as promissor, and Daniels, as guarantor (see exhibit NN). It is apparently not disputed that the Bank also named WSH as a defendant by virtue of its then existing judgment lien against the FARM (see doc. 21). WSH has purchased the promissory note and mortgage delivered to Bank by Indian Creek. I am uncertain as to the status of the foreclosure proceeding.

Daniels scheduled WSH as a creditor holding an unsecured claim of "unknown" amount. He listed the debt as disputed. WSH filed a proof of an unsecured nonpriority claim in the amount of "at least $500,000.00" (exhibit 2). WSH is a limited liability company; John Holtz of Scottsdale, Arizona is a member.

Holtz is also a member of Hunters.˙ It claims to be a creditor of Daniels (and Indian Creek) by virtue of its purchase of a judgment entered in *Iowa District Court for Jasper County against Daniels and Indian Creek in the case of State of Iowa, ex rel., Iowa Department of Natural Resources v. Indian Creek Corporation and Curt Daniels,* Law No. LACV110419 (exhibit 1). The judgment was for $90,000.00 plus interest and court costs (exhibit 1). Having purchased the judgment, Hunters sought to satisfy it by execution against Daniels's shares of stock in Indian Creek.

Sheriff's sale took place July 26, 2006 (exhibit 1). Total of the judgment, interest, costs and fees as of that date was $112,431.95 (id.). Hunters, as assignee of the State of Iowa, purchased the shares of stock for $110,000.00 (id.). Hunters has filed a proof of unsecured nonpriority claim in the amount of $7,431.95(id.).

Daniels has filed an adversary complaint in this bankruptcy (Adv. No. 06–30224) seeking to avoid the transfer of the shares as fraudulent pursuant to 11 U.S.C. § 548. Daniels contends that the sale price was grossly inadequate relative to the value of the stock. He contends in his complaint that the value of the stock was at least $500,000.00.

Daniels believes the land owned by Indian Creek is worth between 1.5 and 1.6 million dollars. The proof of claim by Navajo for the second mortgage is approximately $250,000.00. The Heritage Bank claim was $238,000.00 as estimated by Indian Creek on February 28, 2005. See exhibit MM. If nothing has been paid, perhaps it is $300,000.00 today. WSH no longer has a judgment lien. Indian Creek owns equipment valued by Daniels at $100,000.00. There is no evidence it is encumbered. These values and estimates of secured debt indicate there may be significant equity in Indian Creek's assets, affecting the value of its stock.

Also, Daniels contends that the sale was invalid for other reasons. Hunters has filed answer and motion for summary judgment.

Holtz is also a member of Navajo. It claims to be Daniels's creditor by virtue of a purchase from Constance Daniels, debtor's former spouse, of a note and mortgage to her from Indian Creek, and by its purchase from her of the guaranty of the note by Daniels (exhibit 3, also exhibits A, B and C). Navajo's proof of claim asserts, as to Daniels, that it is an unsecured nonpriority claim in the amount of $249,141.83 (exhibit 3). As to Indian Creek, Navajo is a secured creditor. Daniels has scheduled the debt to Constance Daniels as an unsecured nonpriority claim in the amount of $200,000.00 (exhibit NN).

In his initial schedules, filed August 14, 2006, Daniels listed the following assets:

| | |
|---|---|
| real property | none |
| cash | $80.00 |
| bank account | 222.00 |
| household goods | 500.00 |
| law firm stock | 0.00 |
| accrued wages and tax refund | 1,000.00 |
| claims against IDNR | unknown |
| claims against WSH | unknown |
| monthly social security | 861.00 |

(exhibit NN). He claimed all of the assets exempt except the law firm stock and the two claims (id.). He subsequently amended his schedules of assets to show additional information and to list his interest in real property located in or around Chariton, Iowa (exhibit OO). He claims the real property exempt as his homestead (id.). The property was transferred to Daniels by Indian Creek in August 2003 (exhibit I).

Daniels also amended to show a contingent claim against Hunters and John Holtz. He does not describe the nature of the claim. Also, he amended schedule G

to show his unexpired farm tenancy with Indian Creek (exhibit OO).

Indian Creek filed a chapter 12 petition in this court on February 28, 2005 (exhibit II). Daniels signed the petition electronically as attorney for the debtor (exhibit JJ). He did not apply, nor did Indian Creek, for his appointment as attorney for the debtor. WSH moved for his disqualification as attorney on various grounds (exhibit LL). At hearing before the Hon. Chief Judge Lee M. Jackwig, Daniels conceded he could not act as attorney for Indian Creek (exhibit J, transcript p. 10). Judge Jackwig granted the motion to disqualify.

Also in the case, the chapter 12 trustee moved for an order for Indian Creek to show cause why the case should not be dismissed for failure to file papers in compliance with a court order and the Rules of Bankruptcy Procedure (doc. 16). The court gave Indian Creek a deadline to comply fully with its duties as chapter 12 debtor-in-possession (doc. 34, and see exhibit K). Indian Creek filed documents prior to the deadline, but the trustee filed an Affidavit of Noncompliance (doc. 40). On April 20, 2005, Indian Creek, by Daniels as president, filed its motion to dismiss (doc. 42). The court granted the motion on April 22, 2005 (doc. 43), and the case was dismissed.

Several bank accounts have been used in the financial affairs of Daniels, his professional (law) corporation, and Indian Creek. Daniels has a personal account at the First State Bank of Colfax (exhibit Y). That may be the one unidentified account was listed by him on Schedule B (exhibit NN). Indian Creek, at least from February 2005 through June 2006, had a checking account at Exchange State Bank (exhibits AA–HH). Daniels also had the "Curt N. Daniels Legal Practice Expense Account" at Great Western Bank in Chariton (exhibit

P–X). Although he uses this account to practice law, it is not a P.C.-owned account. It is a personal account. The P.C. has its business account and its client trust account at U.S. Bank in Chariton.

WSH, Hunters, and Navajo (hereinafter collectively "movants") seek conversion of Daniels's chapter 11 case to chapter 7 for cause under 11 U.S.C. § 1112(b). Movants cite three grounds cause for conversion: first, that the case was filed in bad faith; second, that the debtor is not adequately insured, posing a risk to the estate; and third, there is continuing loss to or diminution of the estate and the absence of a reasonable likelihood of debtor's rehabilitation.

Lack of Good Faith as Cause

■■ Movants contend that Daniels lacked good faith in filing his chapter 11 petition. They say that is cause for conversion. It may be that the doctrine of good faith is an independent filing requirement. See Collier on Bankruptcy, ¶ 1112.07[5] (15th ed. rev.2006). Lack of good faith, raised as an instance of cause, permits employment of the option of conversion under 11 U.S.C. § 1112(b). Id. A bankruptcy court may dismiss a case for debtor's bad faith under § 1112(b). *First National Bank of Sioux City v. Kerr (In re Kerr)*, 908 F.2d 400, 404 (8th Cir.1990).

Movants' examples of lack of good faith include Daniels's alleged use of bankruptcy to solve a two-party dispute, his filing knowingly false schedules, and his breach of his fiduciary duties to the estate (Motion to Convert, doc. 20, p. 2).

Movants contend that Daniels has filed the case for the improper purpose of bringing into the bankruptcy court a two-party dispute which began in and which could be decided by Iowa courts. Movants say that Daniels has no reorganization motive for the bankruptcy, only a motive to

frustrate movants' efforts in state court. In addition, movants point out that Daniels has no major assets with which to reorganize; they say he has only the claim to set aside Hunters's execution sale of his stock in Indian Creek.

■ A chapter 11 filing should not be employed merely as a tactic in litigation pending in another court. However, to say that this is Daniels's only motive has not been proven. Daniels operates farmland through a wholly owned corporation. He also leases land from Indian Creek and raises cattle. His operation is beset by legal assaults both on his shares of stock and on the land. It has not been shown that Daniels's motive is anything more than to defend an operation which has been in existence since 1975.

The dispute certainly started out as a two-party argument between WSH and Daniels. WSH purchased some farm real estate that Daniels was willing to let go at tax sale. The dispute arose when Daniels removed what he says he believed to be personalty from the property after WSH had obtained the tax deed. WSH's judgment against Daniels and Indian Creek has been reversed. Its claim has been remanded for a new trial. There has, as yet, been no indication that re-trial will not take place in state court.

If that were all that had taken place between Daniels/Indian Creek and WSH, perhaps bankruptcy would not be an issue at all. Both parties still have their claims and contentions and a state forum in which to try them.

However, Holtz sought to improve his company's position as against Daniels and Indian Creek. Holtz used Hunters to purchase a judgment of the State of Iowa against Daniels and Indian Creek. Hunters levied on Daniels's stock in Indian Creek, and it has purchased it at sheriff's sale.

When Heritage Bank began foreclosure against Indian Creek's farmground, WSH purchased its note and mortgage. Holtz used Navajo to purchase the note and mortgage held by Constance Daniels against the Indian Creek land.

These are all legitimate efforts, likely employed to enable WSH to recover its then existing judgment against Daniels and Indian Creek. As to its tort claim, WSH was certainly an involuntary creditor of Daniels and Indian Creek. But since the alleged tort, it or related entities has acquired three other separate claims from three other creditors, all apparently to protect itself. As to those claims, movants are voluntary creditors of Daniels and Indian Creek. It is somewhat disingenuous to complain that Daniels has filed bankruptcy merely to gain the upper hand in the state court. With regard to the positioning of the movants, it is entirely probable that the only way Daniels can protect his property is to attempt reorganization. I find that movants have failed to show that this bankruptcy case is motivated solely as a litigation tactic to gain the upper hand in the state courts or to frustrate its jurisdiction.

Movants contend that as an element of bad faith Daniels has knowingly filed false schedules. Several instances are raised by movants.

Daniels's attorney filed a statement in this case disclosing he had received a retainer of $12,961.00 and that the filing fee of $1,039.00 had been paid (exhibit NN). The attorney's statement disclosed that the retainer was paid from Daniels's "earnings, wages and compensation." Daniels testified at the meeting of creditors that he had borrowed from his daughter to pay the retainer and that it did not come from wages. His schedules disclosed a debt to a person named Sarah Daniels in

August 2006 for $15,000.00 (exhibit NN). The attorney's statement was incorrect, but I do not find that Daniels's schedules were knowingly false based on this issue.

Daniels initially failed to schedule his interest in an acreage transferred to him in 2003. He amended to do so.

Daniels testified at his meeting of creditors on September 11, 2006, that Indian Creek had sold no cattle in 2006. This was incorrect as Indian Creek had sold cattle at Humeston Livestock Auction, Inc. on March 11, 2006, and received a check for $25,630.25 (exhibit F). On March 21, 2006, the proceeds were deposited in Daniels's "Legal Practice Expense Account" at the Great Western Bank in Chariton (exhibit Q). Nonetheless, on his Statement of Affairs, Daniels did not show any income in 2006 from Indian Creek (exhibit NN, questions 1 and 2). In his Schedule I, Daniels stated on line 17, that "other than social security, [he] has had no income in the last year" (exhibit NN). Daniels testified at trial that he had not looked at deposits in personal checking before signing the schedules.

On June 2, 2006, Daniels deposited $7,500.00 into his Legal Practice Account from rent paid to Indian Creek by tenant Brad Arnold. He did not show the money as income on his Statement of Affairs (exhibit NN).

Daniels testified that Indian Creek owes him money. He said he had worked for Indian Creek for many years and other than in 2005, he took no money from the corporation. On the other hand, he said he donated his labor and additional capital for what was needed. Since filing bankruptcy, he says he has continued to donate his labor to Indian Creek. Notwithstanding his testimony about being owed money, his schedule B shows no indebtedness from Indian Creek as an asset. The evidence is contradictory. If he has donated labor to the corporation, he has not stated the basis for its owning him a debt. Based on the evidence, I cannot find that Daniels's failure to list a claim against Indian Creek as an asset in his bankruptcy was false. However, lack of any debt from Indian Creek to Daniels calls into question the reason for its payments to Daniels in 2006 prior to Daniels's filing.

In his Statement of Affairs, Daniels, in response to question one, disclosed $10,000.00 as 2006 income from his legal practice. His response to question two showed only social security income as income from sources other than employment or business. Nonetheless, from January 9, 2006 to July 26, 2006, Indian Creek wrote at least 18 checks to Daniels's Legal Practice Account and at least one to Daniels (exhibits H, P–U). The 19 checks total $36,577.63. One, check 17064 for $5,000.00, was returned for insufficient funds. The payments were not disclosed in Daniels's Statement of Affairs (exhibit NN). Moreover at trial, Daniels was unable to recall being paid by Indian Creek within the 90 days prior to his bankruptcy. These checks are in addition to the $7,500.00 rent check from Arnold and the $25,630.25 cattle check deposited into Daniels's legal practice expense account.

The falsity of Daniels's schedules is of great concern to the court. His failure initially to schedule his 12–acre homestead is questionable but perhaps just oversight. I am more concerned about the lack of accuracy regarding the deposits into the "Curt Daniels Legal Practice Account." On March 11, 2006, some $25,630.00 was deposited in the account from the sale of cattle by Indian Creek. On June 2, 2006, Daniels deposited $7,500.00 into the account from the payment of rent to Indian Creek by tenant Brad Arnold. From January 9 to July 27, 2006, Daniels deposited in the account roughly $36,000.00 in checks

from Indian Creek. Despite the fact that this was an account owned by Daniels, the transactions, totaling nearly $70,000.00, never show up in his schedules or statement of affairs. The court has heard no explanation for this failure. Perhaps the cause is carelessness or incompetence, or perhaps inexperience in bankruptcy matters. It may be intentional omission. Daniels is an attorney, and this is the second time the requirements of the Bankruptcy Code and Rules have confronted him. I believe he understood the complexity of his affairs, especially in relationship to Indian Creek. His understatement of their complexity as shown in his bankruptcy papers is misleading. It may be that his effort was only to prevent further legal assaults on his property rights based on a filing showing only minimal information and with indifference to accuracy.

■ Good faith is shown by showing honest intent. A court may find lack of good faith based on misrepresentations of material facts. *In re Rognstad,* 121 B.R. 45, 50 (Bankr.D.Haw. *1990).*

Movants contend also that Daniels's breach of his fiduciary duties in this case are indications of bad faith. Breaches identified by movants are that Daniels has failed to establish a debtor-in-possession bank account, and he has failed to file financial statements with the court.

As to the debtor-in-possession account, Daniels says he was unable to establish one for the Indian Creek bankruptcy in 2005, as banks refused his request to open one. He says banks would not do it then, and he believes this is true now. There was no evidence he has attempted since his filing to open such an account. Closing of old bank accounts and opening new bank accounts for payment of bills and taxes is an operating requirement of the United States trustee (see United States Trustee

Manual, Vol. 3, Chapter 11 Case Administration, section 3–3.1.3; 3–3.2.2).

■ Movants also argue that Daniels has failed to file financial statements. They cite 11 U.S.C. § 1116(1)(A) as requiring such statements. That section applies to small business cases. I note that Daniels has stated on his petition that he is not a small business debtor as defined by 11 U.S.C. § 101(51D). That issue was not tried or argued at the hearing. Nonetheless, the U.S. trustee requires certain monthly financial reports. See United States Trustee Manual, id. section 3–3.3. These are required monthly after the filing of the case. The reports include, but are not limited to, cash receipts and disbursement statements (3–3.3.1); statements of operations (3–3.3.2); balance sheet (3–3.3.3); schedules of postpetition liabilities (3–3.3.4); a tax reconciliation statement (3–3.3.5). The U.S. trustee may waive or modify the requirements. There is no evidence he has done so. Daniels has not sought the court's permission not to file such reports. He has not filed any of the reports. Daniels is delinquent in filing his reports for at least three or four months, depending on their due dates. Although movants include failure to file reports as an example of bad faith, it is actually a separate instance of cause under 11 U.S.C. § 1112(b)(4)(H).

Cause—Lack of Insurance

■ Movants also seek dismissal for cause under 11 U.S.C. § 1112(b)(4)(C). Malpractice insurance is also a requirement of the U.S. trustee. Id. section 3–3.2.3. Daniels says although he does not have such insurance, he will not commit malpractice. Failure to maintain appropriate insurance that poses a risk to the estate or to the public is cause under § 1112(b)(4)(C). Practicing law without

malpractice insurance does constitute a risk to his clients.

### Cause—Continuing Loss Without Likelihood of Rehabilitation

■ Movants also say they have shown cause under § 1112(b)(4)(A) which provides that "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Daniels's own schedules I and J show a negative monthly cash flow of $109.00. Daniels has not shown that the personal injury suit he is working on or his increased efforts in his law practice will change that. Movants have shown a present loss to the estate.

Movants argue that Daniels's only plan is to set aside the sheriff's execution sale on his shares of stock in Indian Creek, and if he is successful, to liquidate. Because his plan is essentially for liquidation of assets, they say that there is no likelihood of rehabilitation, which is more than just the confirmation of a liquidation plan. *Loop Corp. v. U.S. Trustee,* 379 F.3d 511, 516 (8th Cir.2004), cert. denied, 543 U.S. 1055, 125 S.Ct. 915, 160 L.Ed.2d 778 (2005). I disagree that Daniels's only option is liquidation. He and Indian Creek are separate entities. If Daniels regains his ownership interest in the stock of the corporation, he is not limited to liquidating the stock. He could liquidate land through Indian Creek; he personally could continue farming, continue practicing law, or perform any combination of these and perhaps other options. Movants have failed to show that his only option is complete liquidation of his stock. Movants have failed to show cause under 11 U.S.C. § 1112(b)(4)(A).

### Conclusion as to Cause

■ As to cause, I find and conclude that movants have shown cause under 11 U.S.C. §§ 1112(b)(4)(C) and (H). I also find that because of the misleading nature of his schedules, the case was filed with lack of good faith. Movants have shown cause also in this regard.

### Remedy

■ Upon a showing of cause, section 1112(b)(1) requires the court to convert or to dismiss "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate."

■ In determining the appropriate resolution of the motion, I must be concerned about what is in the best interest of creditors and the estate. My concern must be for all the creditors, not only the movants.

■ An examination of the schedules (exhibit NN) and the claims register (of which I take judicial notice) shows that in addition to movants there are two taxing authorities as priority creditors, nine unsecured creditors with claims aggregating $79,203.00, one insider creditor with an unsecured claim of $15,000.00, two creditors scheduled with disputed unsecured claims totaling $2,026.00, and one unsecured creditor scheduled with a claim in an unknown amount. The latter three creditors have not filed proofs of claim.

Clearly, movants assert most of the dollar value of claims against Daniels and Indian Creek. My concern is that conversion will result in Hunters compromising the estate's fraudulent conveyance claim with the estate for a small amount of money, gaining sole access to the equity in the farmland through its ownership of the stock and its mortgages against the land. Despite what may be substantial equity in the farmland, only movants may benefit by conversion. A chapter 7 trustee may not be as aggressive in pursuing a debtor's

rights as the debtor might have been. Moreover, any recovery by the trustee would likely be dominated in any distribution by movants' claims.

I understand why Daniels found bankruptcy one, if not his only, option. Movants have positioned themselves on a legal and economic chessboard so as to allow Daniels few moves without a resulting checkmate. WSH has the first mortgage debt against the farmland. Navajo owns the second mortgage. Hunters now owns the stock.

Daniels has filed chapter 11 to protect his property. He does not explain why he has not asked the state court to set aside the sheriff's sale on the stock. He has filed chapter 11 and within it the adversary proceeding to set aside the sale of the stock.

To protect the stock, the land and the farming operation, however, Daniels needs the tumblers in bankruptcy to fall nearly perfectly into place. He must be successful in setting aside the sale of the stock. He must attain some success in keeping WSH's conversion claim to a manageable amount. While dealing with his adversary proceeding and the issue of the tort claim, Daniels needs at the same time to prevent foreclosure against the farmland.

Plan confirmation is not without its problems. If Daniels sets aside the sheriff's sale against the stock, Hunters's claim status will revert to that of an unsecured creditor, and it will dominate the class of unsecured claims. It will have a claim of approximately $100,000.00. Other unsecured creditors will have claims aggregating $79,000.00. This does not even consider the allowance of a claim of WSH. It appears that other than two priority tax claims, Daniels would have only a class of unsecured creditors in his chapter 11. He likely could not obtain confirmation without treating the class as unimpaired. Es-

sentially he would have to pay them in full, and show that such payment is feasible.

All this will take time, and Daniels made no effort to demonstrate that a plan would be confirmed within a reasonable amount of time. The alternative for Daniels is grim—the loss of farmland having significant value.

Conversion of this case to chapter 7 takes away Daniels's chance to reorganize—to regain his stock in Indian Creek and to prevent the foreclosure of the mortgages against the farmland. He may lose significant value all over a dispute about conversion of property, a dispute still unresolved.

Therefore, I understand his effort to save his property rights, and I am concerned about whether chapter 7 would provide much to unsecured creditors other than movants.

Nonetheless, if Daniels desires to afford himself the protection and advantages that the Bankruptcy Code can afford him under his circumstances, he must participate according to the Rules and pursuant to the requirements of the Code. He cannot use the bankruptcy law without abiding by it. And I cannot afford him an opportunity to do so by excusing him from filing reports, setting up debtor-in-possession bank accounts, or providing proper insurance. Just as importantly, I cannot excuse his serious omissions from his Statement of Affairs and his schedules regarding his financial affairs with Indian Creek.

I find that this case presents unusual circumstances. I decline to rule at this time as to conversion or dismissal. I will give Daniels additional time to cure certain delinquencies and omissions. If he does so, the motion will be denied. If he does not, the court will, based on cause found in this decision, either convert or dismiss the case. I have considered the appointment

of a trustee under 11 U.S.C. §§ 1112(b)(1) and 1104(a)(3). Conversion ends Daniels's chance to reorganize. The appointment of a chapter 11 trustee would not. However, in comparing the appointment of a chapter 11 trustee to the appointment of a chapter 7 trustee, the latter is sufficiently beneficial to creditors to select that option. If Daniels does not cure, it is the interest of creditors and the estate that must be protected.

IT IS ORDERED that Curtis Daniels shall have to and including February 1, 2007 to accomplish the following:

(1) he shall establish a debtor-in-possession bank account or accounts within the guidelines and requirements established by the United States trustee;

(2) he shall obtain malpractice insurance as to his law practice and submit proof of such to the United States trustee;

(3) he shall file all delinquent monthly financial reports as required by the United States trustee, working with the United States trustee as to the specific reports required, and the due dates of those reports;

(4) he shall amend his schedules and Statement of Affairs to describe in detail all income received from and all payments made by Indian Creek Corporation to him or deposited in his bank accounts. The amendments shall describe the dates of payments, the purposes or reasons for the payments, and the amounts.

IT IS FURTHER ORDERED that the United States trustee shall, by no later than February 2, 2007, advise the court by a written filing whether there has been compliance with this order. If Daniels has complied, the motion will be denied. If the U.S. trustee advises he has not fully complied, Daniels shall have until February 6, 2007 to file an objection to the advice. If no objection is filed, the court will enter an order either dismissing or converting the case. If objection is filed, the court may consider the advice and the objection with or without hearing. If hearing is held, it will come before the court on February 8, 2007. The time of the hearing, if needed, will be communicated to the parties by separate notice.