NOT FOR PUBLICATION

FILED

DEC 09 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   WW-15-1089-KuJuTa |
| RENEWABLE ENERGY, INC., | Bk. No.   15-10421 |
| Debtor. | |
| RENEWABLE ENERGY, INC., | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed – December 9, 2016

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

Appearances:     Edward P Weigelt argued for appellant Renewable
Energy, Inc.; Thomas Buford argued for appellee
United States Trustee.

Before: KURTZ, JURY and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

On the United States Trustee's motion, the bankruptcy court converted debtor Renewable Energy Inc.'s bankruptcy case from chapter 11 to chapter 7.[1]

In the bankruptcy court, Renewable Energy conceded that cause for conversion or dismissal existed under § 1112(b)(4)(C) because it could not afford to purchase liquor liability insurance covering its continued operation of a bar. But Renewable Energy claimed that dismissal was a better option than conversion because it might be able to retain possession of the leased premises in which its businesses had operated and it might be able to sell those businesses as going concerns. The bankruptcy court disagreed, finding that the interests of Renewable Energy's creditors and the bankruptcy estate were better served by conversion rather than dismissal.

Because the bankruptcy court's finding regarding the interests of creditors and the estate was not clearly erroneous, we AFFIRM.

## FACTS

Most of the relevant facts are not in dispute. Renewable Energy occupied two units in a commercial building located in Seattle, Washington. In one of these two units, Renewable Energy operated a bar. In the other, Renewable Energy was supposed to

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Local Rule" references are to the Local Bankruptcy Rules for the Western District of Washington.

2

operate a restaurant, but the restaurant was non-operational during the time Renewable Energy's chapter 11 case was pending. Renewable Energy filed its chapter 11 petition shortly before being evicted from the leased premises. The landlord's successor in interest, Wells Fargo Bank, as trustee for a commercial mortgage pool securitization trust,[2] asserted that Renewable Energy's leases had expired by their own terms and that Renewable Energy also was in default under the leases for nonpayment of rent and for not keeping the leased premises properly insured.[3] For its part, Renewable Energy asserted that it did not owe the alleged past-due rent to Wells Fargo and that Wells Fargo had improperly interfered with its use and enjoyment of the leased premises. According to Renewable Energy, it held a $500,000 claim against Wells Fargo for interfering with Renewable Energy's proposed sale of its restaurant business to a third party and for its improper handling of the eviction proceedings. As reflected in its schedules, Renewable Energy's only other significant asset was roughly $400,000 of unencumbered restaurant equipment.

Within one month of Renewable Energy's chapter 11 petition filing, the United States Trustee filed a motion to dismiss or

[2]Wells Fargo's full official designation in the underlying case was: "Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C5."

[3]We can and do take judicial notice of the parties' filings in Renewable Energy's bankruptcy case. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989). The record indicates that the bankruptcy court was aware of and considered these filings when it entered the order on appeal. Additionally, the parties have referenced these filings in their appeal briefs without objection.

3

convert the case under § 1112(b). The sole ground offered in support of the motion was Renewable Energy's failure to provide to the United States Trustee proof that it held a liquor liability insurance policy. The United States Trustee argued that Renewable Energy's lack of such insurance exposed its bankruptcy estate to an unacceptable risk of postpetition liquor-related liability and hence constituted cause for dismissal or conversion under § 1112(b).

The United States Trustee noticed its motion to dismiss or convert for hearing on March 6, 2015. According to the United States Trustee, the roughly 16 days' notice it provided was more than sufficient because Local Rule 2015-1(c) only required seven days notice when a lack of insurance was the basis for the requested relief.

Renewable Energy filed a one-page response to the United States Trustee's motion. It did not oppose the timing of the motion or the amount of notice given. Nor did it request a continuance of the March 6, 2015 hearing. In fact, Renewable Energy admitted in its response that liquor liability insurance was prohibitively expensive and conceded that cause existed to dismiss the case.

At the hearing on the motion to dismiss or convert, Renewable Energy reiterated the admissions and concessions it had made in its response. But it opposed conversion of the case from chapter 11 to chapter 7. It pointed out to the court that the amount of debt involved (as reflected in its schedules) was relatively small and that its $400,000 in unencumbered restaurant equipment was far more valuable if sold as part of a going

4

concern rather than piecemeal on a liquidation basis. Renewable Energy expressed its hope that it could reach a deal with Wells Fargo that would allow it to retain possession of the premises, reopen the restaurant, sell it as a going concern, and pay creditors in full. Therefore, Renewable Energy posited, its bankruptcy case should be dismissed rather than converted.

The United States Trustee favored conversion over dismissal. The United States Trustee urged that the creditors of the estate would be fully, immediately and better served if the restaurant equipment was liquidated in chapter 7. In making its argument for conversion, the United States Trustee accepted as true the accuracy of Renewable Energy's representations in its schedules regarding the value of its equipment and the amount of claims held by its creditors.

Wells Fargo also appeared at the hearing and sided with the United States Trustee. Wells Fargo further indicated that it had no interest in attempting to continue to work with Renewable Energy as tenant in the premises.

After acknowledging and accepting Renewable Energy's concession that its lack of liquor liability insurance constituted cause for either conversion or dismissal, the bankruptcy court proceeded to consider which of those two options was in the best interests of creditors and the estate. The bankruptcy court determined that the creditors and the estate would be best served by conversion rather than dismissal. In particular, the bankruptcy court focused on the undisputed fact that Renewable Energy had a free and clear asset (the restaurant equipment) which could be administered to pay off the debts owed

5

to Renewable Energy's creditors. The bankruptcy court thus ordered the bankruptcy case converted from chapter 11 to chapter 7. The bankruptcy court entered the conversion order on March 6, 2015, and Renewable Energy timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158.[4]

## ISSUE

Did the bankruptcy court abuse its discretion when it converted Renewable Energy's bankruptcy case from chapter 11 to chapter 7?

## STANDARDS OF REVIEW

We review the bankruptcy court's order converting Renewable Energy's chapter 11 case to chapter 7 for an abuse of discretion. Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities), 264 F.3d 803, 806 (9th Cir. 2001).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

---

[4]This appeal is not moot. The parties represented at oral argument that the chapter 7 trustee has been holding estate funds from the sale of the restaurant equipment pending resolution of this appeal. If Renewable Energy were to prevail on appeal and if its bankruptcy case were dismissed on remand, the funds currently held by the trustee presumably would be turned over to Renewable Energy upon dismissal.

6

**DISCUSSION**

Section 1112 governs dismissal and conversion of chapter 11 cases. As set forth in § 1112(b), if the bankruptcy court finds "cause" to dismiss or convert, the court is required to decide which of several actions will best serve the interests of the debtor's creditors and the estate. It must:

> (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate.

Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 612 (9th Cir. BAP 2014). The bankruptcy court has an independent duty to consider the impact of dismissal and conversion and to decide which alternative is in the best interest of all creditors. Id. at 612-13.

Here, the bankruptcy court considered the impact of these two alternatives and decided that Renewable Energy's creditors would be better served by conversion under the undisputed facts of the case. Those facts established that Renewable Energy's creditors likely could be paid in full if the estate's unencumbered assets were liquidated by a chapter 7 trustee and the proceeds distributed to creditors.

The bankruptcy court did not explicitly consider the appointment of a trustee or an examiner, or the potential existence of unusual circumstances that might have militated against dismissal or conversion under § 1112(b)(2). Even so, Renewable Energy did not seek in the bankruptcy court the appointment of a trustee or examiner as an alternative to

7

conversion, nor has it discussed these alternatives in its appeal brief. As a result, Renewable Energy has forfeited its right to raise these alternatives on appeal. <u>Kenny G Enters., LLC v. Casey (In re Kenny G Enters., LLC)</u>, 2014 WL 4100429, *12 (Mem. Dec.) (9th Cir. BAP Aug. 20, 2014); <u>see also</u> <u>Christian Legal Soc'y v. Wu</u>, 626 F.3d 483, 487-88 (9th Cir. 2010) (stating that appellate court would not consider matters not "specifically and distinctly argued in appellant's opening brief.").

As for the applicability of § 1112(b)(2)'s unusual circumstances rule, that rule does not apply under the undisputed facts of this case. Renewable Energy admitted to the bankruptcy court that it had not purchased liquor liability insurance and that it could not afford to do so. As a result, there was no way Renewable Energy could have satisfied the unusual circumstances rule's cure requirement set forth in § 1112(b)(2)(B)(ii), and, hence, the unusual circumstances rule indisputably was inapplicable.

Renewable Energy argues on appeal that its admitted failure to procure liquor liability insurance might not have constituted "cause" under § 1112(b)(4)(C). As Renewable Energy puts it, because Washington law does not require all bars to maintain liquor liability insurance, the bankruptcy court should not have viewed its failure to obtain such insurance as cause to dismiss or convert. As a threshold matter, we are loathe to consider this argument because the bankruptcy court relied upon Renewable Energy's concession that its failure to obtain liquor liability insurance constituted "cause" under § 1112(b)(4)(C). <u>See</u> <u>Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)</u>, 773 F.3d 990,

8

998-99 (9th Cir. 2014) (holding that issue not raised in the bankruptcy court was forfeited); Barnes v. Belice (In re Belice), 461 B.R. 564, 569 n.4 (9th Cir. BAP 2011) (same).

Even if we were to consider this argument, it has no merit. Whatever the position of the state of Washington might be regarding bars such as Renewable Energy's carrying liquor liability insurance, Renewable Energy's failure to carry such insurance posed a genuine risk to both Renewable Energy's creditors and the public. The United States Trustee and the bankruptcy court recognized this risk, and the bankruptcy court correctly determined that liquor liability insurance was an "appropriate" type of insurance for purposes of § 1112(b)(4)(C). See In re Daniels, 362 B.R. 428, 435-36 (Bankr. S.D. Iowa 2007) (holding that chapter 11 debtor attorney's failure to obtain legal malpractice liability insurance posed a risk both to the estate and to the public); see also 7 Collier on Bankruptcy ¶ 1112.04 [6][c] (16th ed. 2015) (stating that 1112(b)(4)(C) requires the chapter 11 debtor to maintain the types of insurance necessary to mitigate the risks to the estate and the public arising from the debtor's continued operations).

Renewable Energy's bond argument similarly lacks merit. According to Renewable Energy, the bond that Wells Fargo was required to post in order to move forward with the eviction proceedings sufficiently protected its creditors. Once again, Renewable Energy could have raised this argument in the bankruptcy court but failed to do so. Regardless, it is plain that the bond did not sufficiently protect Renewable Energy's creditors. The bond only addressed one type of risk: the risk

9

that Renewable Energy ultimately would prevail in the eviction proceedings but would incur compensable damages in the process. Renewable Energy has not pointed to anything in the record indicating that the bond would have protected its creditors or the public from any other type of risk associated with Renewable Energy's continued operations.

Renewable Energy additionally argued that, in order for the bankruptcy court to find cause under § 1112(b)(4), the United States Trustee was required to demonstrate: (1) an ongoing and continuing loss to or diminution of the estate; and (2) the absence of a reasonable likelihood of reorganization. Renewable Energy misconstrues the statute. Any of the factors individually set forth in § 1112(b)(4) can, by themselves, constitute cause for conversion or dismissal of a chapter 11 case. In re Products Int'l Co., 395 B.R. 101, 110 (Bankr. D. Ariz. 2008) (holding that the factors constituting cause set forth in the statute are meant to be read in the disjunctive). Accord, 7 Collier on Bankruptcy, supra, at ¶ 1112.04[6]. Thus, having established the existence of one of the grounds for dismissal or conversion under § 1112(b)(4) – a failure to maintain appropriate insurance – the United States Trustee was not required to establish any additional cause for the relief it requested in its motion to dismiss or convert.

Renewable Energy further contends that the bankruptcy court, in choosing conversion over dismissal, ignored the debtor's interests and all of the economic benefits its businesses as going concerns could provide to suppliers, employees and the community. There are two significant problems with this

10

contention. First, the statute necessarily requires the bankruptcy court to focus on the interests of the estate's creditors and not on the debtor's interests. See generally Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens), 552 F.3d 958, 961 (9th Cir. 2009) ("the court must consider the interests of all of the creditors"). And second, Renewable Energy assumes without any factual basis that it would have been able to realize, going forward, the claimed benefits to itself, to its suppliers, and to its employees. The record before the bankruptcy court indicated otherwise. Renewable Energy's contention simply ignores the dire situation it was confronted with at the time. It was forced to file bankruptcy shortly before being evicted by Wells Fargo, and Wells Fargo appeared at the hearing on the United States Trustee's motion and made it clear that it had no interest in consensually resolving its battle with Renewable Energy for possession of the leased premises. Under these circumstances, the bankruptcy court's finding that the interests of Renewable Energy's creditors and its bankruptcy estate were best served by conversion rather than dismissal was not clearly erroneous.

Renewable Energy only makes one other comprehensible argument on appeal. Renewable Energy maintains that it did not have sufficient time or opportunity to present evidence demonstrating that dismissal was a better option than conversion. The bankruptcy court was required to ensure that the United States Trustee gave Renewable Energy sufficient notice and opportunity to respond to the motion as was appropriate under the circumstances. §§ 102(1), 1112(b)(1); In re Kenny G Enters.,

11

LLC, 2014 WL 4100429, *9. Renewable Energy was given roughly sixteen days advance notice of the hearing on the motion to dismiss or convert, and it never asked the bankruptcy court for a continuance. Thus, it is difficult to comprehend how Renewable Energy credibly can claim that it was denied a sufficient opportunity to present its case.

Moreover, the undisputed facts in the record amply supported the bankruptcy court's choice of conversion over dismissal, and Renewable Energy has not on appeal pointed us to any other facts that might have materially altered that choice. Nor are we independently aware of any such facts. In the absence of any indication of prejudice, any alleged lack of notice or due process fails to justify reversal. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 777 (9th Cir. 2008); see also In re Bartle, 560 F.3d 724, 729–30 (7th Cir. 2009) ("[appellant's] substantial rights must have been affected by the [notice] error, and that is true only if [the appellant] had a response to the [appellee's] motion that might have altered the court's decision.").

To the extent Renewable Energy could have argued that the governing procedural rules required a longer notice period than was given, we disagree. While Rule 2002(a)(4) generally requires twenty-one days advance notice of a hearing on a motion to dismiss or convert, Rule 9006(c) permitted the bankruptcy court to reduce that amount of time. In re Bartle, 560 F.3d at 728-29. This is what the bankruptcy court did by way of its Local Rule 2015-1(c), which provides:

Insurance. If the debtor in possession fails timely to

12

provide the United States trustee with proof of insurance or insurance renewal, the United States trustee may move to convert or dismiss the case on 7 days' notice to the debtor, parties who have requested notice, and any committee, unless the court allows a shorter period on a showing of exigent circumstances.

In any event, if Renewable Energy took issue with the United States Trustee's compliance with Rule 2002(a)(4) or its reliance on Local Rule 2015-1(c), it was incumbent upon Renewable Energy to raise these issues both in the bankruptcy court and on appeal. It did not do so, and thus it has forfeited these issues. In re Mortg. Store, Inc., 773 F.3d at 998–99; Christian Legal Soc'y, 626 F.3d at 487–88.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's conversion of Renewable Energy's bankruptcy case from chapter 11 to chapter 7.